ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. A jury sitting before the Sunflower County Circuit Court found Cleveland Hope guilty of burglary of a dwelling. The circuit court sentenced Hope to a twenty-year sentence with ten years suspended and ten years to serve followed by five years of post-release supervision and five years of unsupervised post-release supervision. Hope claims the circuit court erred when it (1) overruled his motion for a directed verdict, (2) overruled his motion for a mistrial after the burglary victim *668 testified that Hope was on house arrest when their child was born, and (3) overruled his motion for a mistrial after Investigator Johnnie Bland testified that Hope did not want to comment about the case. Additionally, Hope claims the cumulative effect of the errors requires that we reverse the judgment of the circuit court. Finding no error and consequently no cumulative effect of errors, we affirm the judgment of the circuit court.
FACTS AND PROCEDURAL HISTORY
¶ 2. The events that led to Hope’s conviction and present appeal transpired in Indianola, Mississippi on February 6, 2006. At approximately 5:00 a.m., Etricia Mitchell heard banging on her back door. Etri-cia answered her door and found Hope. Hope is the father of Etricia’s child, and he wanted to know whose car was at her house. Etricia told Hope that the car belonged to her cousin, but Hope did not believe her. Etricia told Hope to leave, but Hope refused. Instead, he kicked the door in, went into Etricia’s house, and assaulted Etricia. Hope soon realized that no one else was in the house with Etricia except their son.
¶ 3. An unidentified person was with Hope. He followed Hope into the house, but he did not participate in Hope’s assault of Etricia. At some point, this unidentified person told Hope that the authorities had been summoned. Hope stopped his assault of Etricia, but he took her cell phone.
¶ 4. Officer Irish Johnson of the Indiano-la Police Department was the first responder on the scene. Later, Investigator Bland of the Indianola Police Department went to Etricia’s house and photographed the damage to Etricia’s home as well as Etricia’s injuries.
¶ 5. On May 10, 2006, a Sunflower County grand jury returned an indictment against Hope and charged him with third offense domestic violence and burglary of an occupied dwelling. Hope pled not guilty, and on June 14, 2006, he proceeded to trial.
ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED HOPE’S MOTION FOR A DIRECTED VERDICT.
¶ 6. During direct examination, Etricia testified that Hope banged on her door and that she “told him to leave before [she] called the police. He was like f — the police. And about that time [she] told him [she] was going to call the police, he had knocked the door down and came in the house.” The prosecution asked, “[h]ow did he knock it down?” Etricia responded, “[h]e kicked it in.” Later during direct examination, Etricia testified that Hope entered her house first, and the unidentified man entered some time afterward. According to Etricia, when her door was kicked in, she ran to her bathroom and locked the door, but Hope kicked that door in as well. Hope then “pulled [Etricia] by [her] hair and grabbed [her] out of the bathroom.” Hope proceeded to search Etricia’s house for another man, but there was no one else there.
¶ 7. Etricia went on to testify:
After he stopped looking to see whether or not nobody [sic] was in the house, he caught me at my door in my room, and he just came and pushed my head up against the door. I ran down the hall, and I slipped and fell. By the time I got in the kitchen, the guy that was with him kept telling him the police was coming, but he didn’t — he kept hitting me and kicking me. That’s how I got the bruises on my leg and all up here.
*669 Etricia testified that Hope kicked her “ten times or more” and that Hope hit her in the face with his hand “about” twenty times.
¶ 8. On cross-examination, Etricia testified that when Hope was outside her door, she told him to leave, and “by the time [she] could go get the phone, he had broke[n] in[to] the house.” Counsel for Hope then had Etricia clarify the precise sequence of events. Etricia testified that she turned and walked away from the door to get her cell phone from her bedroom down the hallway; she made it as far as the living room and “heard him start kicking [the door].” When Etricia “heard him start kicking [the door],” she ran down her hallway to her bedroom and closed her bathroom door. At that point, the following exchange transpired:
Q. So when that door was kicked in, that could have been him or the guy that was with him?
A. No. The guy that was with him never came in the house until after.
Q. Okay. I’m not suggesting that he did. What I’m suggesting is when he kicked the door in, it could have been either one of them.
A. Correct.
¶ 9. At the close of the prosecution’s case, Hope moved for a directed verdict. Counsel for Hope stated, “the evidence is, at least, questionable as to who kicked the door in.” The circuit court overruled Hope’s motion. The defense rested without calling any witnesses. Afterward, Hope submitted a peremptory instruction, but the circuit court refused to grant that instruction. Post-trial, Hope filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial, though he did not specifically state that the evidence against him was insufficient to sustain a guilty verdict because it was unclear who kicked in Etricia’s door.
¶ 10. On appeal, Hope’s entire argument, not including factual statements and a brief citation regarding the fact that a motion for directed verdict, a request for a peremptory instruction, and a motion for a JNOV all challenge the sufficiency of the evidence, is as follows:
In this case, the evidence was clear that the victim of the [h]ouse burglary, Etri-cia Mitchell, did not know who actually “broke” into her home. There was another person with Hope and either one of them could have been the one who kicked in the door. Ms. Mitchell, without doubt, testified that this was true. Since who “broke” into the home was an essential element of the crime for which Hope was convicted, the Court should have directed a verdict for Hope for this charge.
¶ 11. Hope last challenged the sufficiency of the evidence in his post-trial motion for a JNOV. “A motion for a judgment notwithstanding the verdict is a challenge to the sufficiency of the evidence.” Gilbert v. State, 934 So.2d 330, 335(¶ 9) (Miss.Ct.App.2006). In reviewing challenges to the sufficiency of the evidence, we consider the evidence in the light most consistent with the verdict. Carr v. State, 655 So.2d 824, 837 (Miss.1995). We give the State “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Id. If we conclude that reasonable jurors could not have found beyond a reasonable doubt that Hope was guilty, then we must reverse Hope’s conviction. Otherwise, we must affirm. Id.
¶ 12. A person is guilty of burglary of a dwelling upon sufficient proof of “breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house *670 or not, with intent to commit some crime therein.” Miss.Code Ann. § 97-17-23 (Rev.2006). The crux of Hope’s argument is that Etricia could not testify with any certainty that Hope kicked her door in. That is, Hope claims there is a reasonable doubt whether he broke into and entered Etricia’s house because it is possible that the unnamed individual who accompanied him kicked in Etricia’s door. This issue is without merit.
¶ 13. First and foremost, Etricia testified that Hope banged on her door; Hope thought that the car parked in her yard belonged to another man; his behavior and demeanor concerned her enough that she intended to call the police; once she made her intent known, Hope stated “f — the police”; and her exterior door was subsequently kicked in. It is noteworthy that there was absolutely no evidence that the unidentified man kicked in Etricia’s door. Additionally, Etricia unequivocally testified that Hope then kicked in her bathroom door. Considering Hope’s angry state, a rational juror could certainly have concluded that Hope jealously believed Etricia had a man in her home; he stated “f — the police” in response to Etricia’s threat to call the police; and since Hope kicked in Etricia’s bathroom door, he also kicked in Etricia’s front door. As the State persuasively argues, “every reasonable inference arising from [Hope’s] actions and words immediately prior to the breaking in of the door would support the conclusion that it was indeed [Hope] who did so.”
¶ 14. Furthermore, there was no evidence that Etricia invited Hope or the unidentified man into her home, and it is uncontested that Hope went inside Etri-cia’s home and beat her. “It is well-established in Mississippi that a breaking is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or raising a latch.” Davis v. State, 910 So.2d 1228, 1231(¶ 8) (Miss.Ct.App.2005) (citing Gross v. State, 191 Miss. 383, 391, 2 So.2d 818, 820 (1941)). “Even if the door was unlocked or if only slight force was needed to gain entry, such entry has been viewed as forcible for the purposes of our burglary statute.” Wheeler v. State, 826 So.2d 731, 735(¶ 12) (Miss.2002) (citing Wright v. State, 540 So.2d 1, 5 (Miss.1989)).
¶ 15. Even if we assumed, without any evidence, that this unidentified man kicked in Etricia’s door and waited outside while Hope beat and kicked Etricia, Hope would still not overcome his conviction. As the State correctly points out, “[i]t would simply mean that the other man was an aider and abettor of the felony.” Because we are bound to consider the evidence in the light most favorable to the verdict and give the State the benefit of any inferences that can be drawn from the evidence, we must find that reasonable jurors could have found beyond a reasonable doubt that Hope kicked in Etricia’s door.
II. WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED HOPE’S REQUEST FOR A MISTRIAL AFTER ETRICIA TESTIFIED THAT HOPE WAS ON HOUSE ARREST WHEN THEIR SON WAS BORN.
¶ 16. During Hope’s counsel cross-examination of Etricia, Hope’s counsel asked Etricia whether Hope was present at the hospital when their son was born. Etricia answered, “[n]o. He was on house arrest.” Hope’s attorney requested a mistrial because “[t]hey’ve now been informed that he’s got a previous conviction.” The circuit court overruled Hope’s motion, and Hope now appeals. As we review Hope’s assertion, we give “considerable discretion to the trial judge in determining whether a mistrial is warranted *671 because he is peculiarly situated to determine if a remark is truly prejudicial.” McGilberry v. State, 741 So.2d 894, 913(¶ 63) (Miss.1999) (citation and internal quotations omitted).
¶ 17. There is no merit to this assignment of error. As the prosecutor pointed out, the jury was fully aware that Hope had prior convictions. Hope was charged with burglary and a count of third offense domestic violence. By nature of the charges against Hope, the jury was on notice that Hope had at least two prior convictions, and Etricia’s statement regarding house arrest did not connect Hope to any particular conviction. Hope experienced absolutely no prejudice as a result of Etricia’s answer to his attorney’s question.
III. WHETHER THE CIRCUIT COURT ERRED WHEN IT OVERRULED HOPE’S REQUEST FOR A MISTRIAL AFTER INVESTIGATOR BLAND TESTIFIED THAT HOPE DID NOT WANT TO COMMENT ABOUT THE CASE.
¶ 18. During Investigator Bland’s direct testimony, the prosecution asked Investigator Bland whether he was able to identify the unnamed individual who accompanied Hope. Investigator Bland responded, “[n]o. I did get a chance — I spoke with Etricia Mitchell. She stated that she didn’t know the guy. When we tried to talk to Cleveland Hope, he didn’t want to comment about the case.”
¶ 19. Counsel for Hope moved for a mistrial “[bjased on [Investigator Bland’s] statement about [Hope] exercising a constitutional right not to testify.” The prosecution' responded and argued that Investigator Bland “has a right to say the defendant gave no statement, and the Court can certainly instruct the jury that he has a constitutional right to do that, and it cures the problem.” Hope’s attorney argued that a curative instruction would not cure Investigator Bland’s statement. The circuit court denied Hope’s request for a mistrial and went on to state, “I’m not going to instruct them. I think it just draws attention to it at this point.” Hope now appeals. As with the previous issue, we give “considerable discretion to the trial judge in determining whether a mistrial is warranted because he is peculiarly situated to determine if a remark is truly prejudicial.” McGilberry, 741 So.2d at 913(¶ 63).
¶ 20. Hope’s entire argument is as follows:
There is not [sic] question but that a decision of whether to grant a mistrial lies within the sound discretion of the trial judge. However, there should at least be inquiry made and consideration given as to whether an admonition or curative instruction could remove any prejudicial effect that the inadmissible matter being place [sic] before the jury may have caused. McGilberry v. State, 741 So.2d 894 (Miss.1999)[.]
Again, no cautionary instruction was given to the [j]ury and the [j]ury was not questioned about whether they could disregard the statement made by the witness since Hope had a constitutionally guaranteed right not to give a statement to the police.
¶ 21. We are unable to find any portion of McGilberry in which the Mississippi Supreme Court held as Hope’s attorney references.[1] In one issue, the McGilberry *672 court addressed an alleged comment on a defendant’s failure to testify, but at no point does McGilberry address a comment on a defendant’s right to decline to give a statement.
¶ 22. We cannot conclude that Hope experienced any prejudice as a result of Investigator Bland’s statement. Investigator Bland’s statement was not a comment on Hope’s failure to testify. As the State points out, Investigator Bland’s statement “did not invite the jury to consider the fact that [Hope] did not give a statement as evidence of his guilt. Instead, [Investigator Bland] was simply explaining why he had been unable to identify and locate the man who was with [Hope].” What is more, the circuit court later instructed the jury that Hope’s decision not to testify could not be considered as evidence of guilt. Accordingly, we must conclude that the circuit court did not abuse its discretion when it declined to grant Hope’s request for a mistrial.
IV. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS MANDATE REVERSAL.
¶ 23. Hope claims the cumulative effect of the errors require that we reverse this matter for a new trial. However, we have found no individual errors, and it follows that there can be no cumulative effect of errors that do not exist. There is no merit to this issue.
¶ 24. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED AND TEN YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION AND FIVE YEARS OF UNSUPERVISED POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.

. McGilberry is a fifty-four page opinion regarding a capital murder conviction. Counsel for Hope failed to cite to any specific page of that opinion. Though there is certainly more than one issue regarding the failure to grant a mistrial in McGilberry, not once does that opinion state anything resembling a requirement that "there should at least be in *672 quiry made and consideration given as to whether an admonition or curative instruction could remove any prejudicial effect” of a supposed inadmissible matter. Then again, it is unclear exactly what counsel for Hope suggests. Counsel could mean that the circuit court should ask the jury whether it could disregard such a statement. However, by using the passive voice, counsel for Hope could also be suggesting that the circuit court should consider whether a curative instruction would relieve any prejudice of an improper statement. If that is the substance of Hope’s argument, then there is no doubt the circuit court satisfied that — and ultimately concluded that an admonition or curative instruction would only draw attention to Investigator Bland's statement.