ROBERTS, J.,
for the Court:
¶ 1. On the morning of January 5, 2009, Deborah Ruhr, Coast Inn and Suites’ (the Hotel) manager, discovered that her office at the Hotel had been burglarized. After an investigation conducted by the Wave-land City Police Department, Danny Powell Sr. was arrested and charged with burglary of the Hotel. After a trial in the Hancock County Circuit Court, Powell was convicted of burglary and sentenced, as a habitual offender, to a life in the custody of the Mississippi Department of Corrections (MDOC), without eligibility for parole or probation. Powell now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. When Ruhr arrived at her office at approximately 7:00 a.m. on January 5, *851 2009, she discovered that it had been burglarized after she had left the previous day. Ruhr then contacted the police and the Hotel’s owners to inform them of the burglary. Ruhr made an inventory of the stolen items. She noted that a computer screen, keyboard, computer mouse, a CD player, a CD titled “Deb’s Mix,” a briefcase, various airline-sized liquor bottles, and a digital camera were all missing from her office.
¶ 3. The police began their investigation by reviewing the Hotel’s surveillance video from the night before and early morning hours of that day. The video showed that at approximately 2:36 a.m. a person in a gray hooded sweatshirt, who was riding a bicycle, pulled into the Hotel breezeway between Rooms 125 and 127. This person was later identified as Powell. Powell approached Ruhr’s office door and slid a credit card or something similar down the door to unlock it. The video showed Powell exit the office carrying a wicker basket of items. He then re-entered the office and left again several minutes later. Tim Pressgrove, a maintenance man for the Hotel, provided the license plate number of a suspicious van he had seen in the Hotel parking lot earlier that morning. He told the police that he had seen a man, later identified as Powell, fitting the description at the Hotel earlier that morning being picked up in a van. He also told the police that Powell was wearing a hooded sweatshirt and was carrying a bicycle downstairs. As Pressgrove walked closer to the van, the van’s driver, Don Wilson, loudly greeted Pressgrove as if to alert Powell. Pressgrove noted that Powell quickly squatted as to avoid detection.
¶ 4. Throughout the investigation, at least two other individuals were interviewed as possible suspects, but they were both later determined not to be suspects. Investigator Laura Stepro, lead investigator on the case, followed up on the license plate number Pressgrove provided and interviewed Wilson. Wilson informed them that he and Powell were co-workers. He also stated that Powell called him on the morning of January 5, 2009, to ask if he would drive Powell to the Hotel to pick up some clothes. Wilson drove Powell to the Hotel and observed Powell exit an upstairs room with clothes, a box, and a radio. Wilson further provided Investigator Ste-pro with the name Allen Thomas, a person with which Powell had previously lived. Thomas then provided Investigator Stepro with the location of Powell’s current residence at Paul Jordan’s home. Investigator Stepro met with Jordan and learned that Powell was renting a shed on Jordan’s property. Jordan also stated that three other people were living on his property, but Powell was the only one besides Jordan who had a key to the shed.
¶ 5. Based on this information, Investigator Stepro executed a search warrant for the shed Powell was living in at the time. The search produced a computer mouse, a tan, hooded sweatshirt, blue shorts, and a CD titled “Deb’s Mix.” Later that day, Jordan contacted Investigator Stepro about some computer parts he discovered on his property. Investigator Ste-pro returned to Jordan’s property and recovered two computer monitors and two computer keyboards in a planter pot near the woods.
¶ 6. Investigator Stepro searched for Powell and found him on Herlihy Street. She advised Powell of his Miranda rights, and he agreed to give a statement. Powell was indicted, as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007), on June 25, 2009, for one count of burglary. He entered a plea of not guilty on August 17, 2009, in the circuit court. Shortly after voir dire was completed on February 2, 2010, the State *852 filed a motion to amend Powell’s indictment to reflect Powell’s habitual-offender status pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2007) instead of the Mississippi Code Annotated section 99-19-81. This motion was granted.
¶ 7. Powell’s trial began on February 2, 2010, with the State calling Ruhr to testify. Then Pressgrove testified for the State followed by Wilson, Thomas, Jordan, Investigator Howard Parker, and Investigator Stepro. In her testimony at trial, Investigator Stepro discussed her first meeting with Powell at which he agreed to give a statement. He was not under arrest at the time he gave the statement. Powell confirmed Wilson had picked him up from the Hotel on several occasions. Powell then informed Investigator Stepro “that he wasn’t going to say anything.” When asked if she stopped the interview at that point, Investigator Stepro stated, “No.” She then testified that “[Powell] said he was not going to tell us the truth about something he did wrong, nor was he going to do anything for us to help [us] put him away.” The circuit judge interrupted Investigator Stepro’s testimony, excused the jury, and asked what “the substance of the anticipated testimony” was. The State responded by saying that Investigator Stepro would testify that Powell told her to take him away because “he’s not going to confess to something he did or didn’t do.” Powell objected to any testimony after Powell requested the interview be stopped. The circuit judge sustained that objection and stated that Investigator Stepro was “not to discuss in front of the jury anything that was stated after ... [Powell] says ‘if you have anything on me, arrest me.’ and that she was not to say that Powell told her he was not going to tell her anything he did or did not do.” After questioning Investigator Ste-pro, the State rested its case. Powell then rested his case as well. At the end of his two day trial, Powell was found guilty of burglary and sentenced to life in the custody of the MDOC pursuant to the enhanced sentencing found in Mississippi Code Annotated section 99-19-83 (Rev. 2007).
¶ 8. On appeal, Powell raises three issues, which we recite verbatim:
I. Whether the [circuit court] erred in allowing the [State] to amend the indictment to charge Powell as a habitual offender under [Mississippi Code Annotated section 99-19-83] instead of [Mississippi Code Annotated section 99-19-81]?
II. Whether Investigator Stepro’s testimony violated Powell’s Fifth Amendment rights?
III. Whether the [circuit] court erred in overruling Powell’s motion for a new trial?
ANALYSIS
I. Amending the Indictment
¶ 9. The circuit court’s decision to allow an indictment to be amended is a question of law. Jackson v. State, 943 So.2d 746, 749 (¶ 11) (Miss.Ct.App.2006) (citing Peterson v. State, 671 So.2d 647, 652 (Miss.1996) (overruled on other grounds)). Questions of law receive a de novo review. Jones v. State, 912 So.2d 973, 975 (¶ 8) (Miss.2005) (citing UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc., 525 So.2d 746, 754 (Miss.1987)).
¶ 10. On appeal, Powell first argues that the circuit judge committed error when he permitted the State to amend his indictment from being a habitual offender under Mississippi Code Annotated section 99-19-81 to being a habitual offender under Mississippi Code Annotated section 99-19-83. Pursuant to Mississippi Code Annotated section 99-19-81, Powell *853 faced a maximum sentence of seven years; Mississippi Code Annotated section 99-19-83 increased Powell’s potential sentence to life without eligibility for parole or probation. Specifically, Powell asserts that because the circuit judge permitted this amendment on the first day of Powell’s trial, he was unfairly surprised and did not have fair notice and opportunity to present a proper defense. He concedes that an amendment to an indictment is permissible when the amendment is one of form and not of substance. Akins v. State, 493 So.2d 1321, 1322 (Miss.1986) (citations omitted). However, he argues that this amendment was one of substance and was, therefore, impermissible.
¶ 11. Uniform Rule of Circuit and County Court 7.09 provides the language that allows the State to amend an indictment to reflect habitual-offender status or enhanced sentencing; it reads as follows:
All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as [a] habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss.Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
Powell cites Smith v. State, 477 So.2d 191, 195-96 (Miss.1985) to support his contention that he was not provided adequate notice and a meaningful opportunity to be heard. In the Smith case, Turner Paul Smith was indicted for one count of burglary, and the indictment also stated that there were two “separate incidences at different times and [Smith had] been sentenced thereon to separate terms of one (1) year or more in various state penal institutions.” Id. at 192. Also, the indictment stated: “Habitual Criminal Burglary 97-17-33.” Id. The indictment did not state under which habitual-offender statute Smith was indicted. Id. at 193. It was not until after Smith was convicted and subject to sentencing that it was determined he would be sentenced under Mississippi Code Annotated section 99-19-83, thereby making his sentence a mandatory life sentence without the eligibility for parole or probation. Id. at 193-94. The Mississippi Supreme Court held: “An analysis of the indictment in this case, together with the foregoing transcript of the sentencing hearing, clearly show[ed] a denial of due process in sentencing. The comparison of a seven-year sentence [under Mississippi Code Annotated section 99-19-81], as opposed to a life sentence [under Mississippi Code Annotated section 99-19-83], without probation or parole is too significant a deprivation of liberty to be subjected to a procedural bar.” Id. at 195.
¶ 12. Powell also argues that the supreme court’s decision in Griffin v. State, 540 So.2d 17, 20-21 (Miss.1989) supports his argument that the circuit court erred in allowing the State to amend the indictment. In Griffin, the circuit court allowed the State to amend the indictment after it rested its case. Id. at 20. Willie Earl Griffin objected to this amendment on the ground that the amendment was one of substance and ultimately altered his whole theory of defense. Id. The supreme court agreed and found that “the State recognized that it had failed to meet its burden of proving that [Griffin] had committed aggravated assault by shooting [Hilbert] Cook and the amendment brought about an entirely new charge”; therefore, the amendment was a substantive change and not permissible at such a late date. Id. at *854 21. Lastly under this issue, Powell cites to Akins v. State, 493 So.2d 1321, 1322 (Miss.1986), to argue that the amendment to his indictment from Mississippi Code Annotated section 99-19-81 to Mississippi Code Annotated section 99-19-83 was impermissible. -Ernest Akins Jr. was initially indicted as a habitual offender under Mississippi Code Annotated section 99-19-81; however, after he was convicted, but before he was sentenced, the circuit court permitted the State to amend Akins’s indictment to charge him as a habitual offender under Mississippi Code Annotated section 99-19-83. Id. The supreme court found that this amendment was improper because the indictment was not “was not sufficient to apprise the defendant that the state was seeking life imprisonment without probation or parole and that the amendment to the indictment was one of substance, not merely of form[,]” and they vacated Akins’s sentence and remanded the case for sentencing pursuant to Mississippi Code Annotated section 99-19-81. Id.
¶ 13. In the current case, the State sought to amend the indictment after voir dire had been completed. This fact distinguishes this case from the eases Powell has cited because in Akins and Smith, the indictment was amended after trial but before sentencing, and in Griffin, the amendment was sought after the State had rested its case and altered the actual substantive charge. Instead, we find that the case factually similar to the current case is Wells v. State, 57 So.3d 40, 48 (¶27) (Miss.Ct.App.2011) (citing Williams v. State, 766 So.2d 815, 816-18 (¶¶ 5-10) (Miss.Ct.App.2000)), where this Court held: “In accordance with [Uniform Rule of Circuit and County Court 7.09], ... an amendment requested on the day of the trial to add an enhanced penalty was proper where the defendant was apprised of the charge pending against him, was not unfairly surprised, and was afforded a fair opportunity to present his defense.”
¶ 14. Additionally, the State’s amendment was not one of substance but one of form. An amendment is considered to be one of substance when the essence of the charge is altered. Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994). If the amendment either “materially alter[s] facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter[s] a defense to the indictment as it originally stood so as to prejudice the defendant’s case[,]” then the amendment is substantive. Spears v. State, 942 So.2d 772, 774 (¶ 6) (Miss.2006) (quoting Miller v. State, 740 So.2d 858, 862 (¶ 13) (Miss.1999)). The substance of Powell’s indictment did not change. The previous crimes the State relied on to charge him as a habitual-offender under Mississippi Code Annotated section 99-19-81 were the very same ones the State relied on when amending the indictment to reflect his habitual offender status under Mississippi Code Annotated section 99-19-83. Powell’s indictment listed his previous convictions as follows: a September 1986 burglary conviction with a sentence of five years in custody of the MDOC, a March 1987 conviction of jail escape and sentence of five years in the custody of the MDOC, an August 1999 conviction of aggravated battery and sentence of four years in the custody of the Louisiana Department of Public Safety and Corrections, and an August 1999 conviction for grand larceny and sentence of two years in the Louisiana Department of Public Safety and Corrections. The essence of Powell’s charge of burglary was neither altered nor was a defense to a burglary charge altered by the amendment to the indictment.
¶ 15. In the recent case Gowdy v. State, 56 So.3d 540, 545 (¶ 19) (Miss.2011), the *855 supreme court held that the State’s attempt to amend Tyrone Gowdy’s indictment to reflect his status as a habitual offender was not permissible because “an amendment to the indictment to allege habitual[-]offender status after conviction is an unfair surprise.” Gowdy was charged with felony driving under the influence, and he elected to go to trial after rejecting the State’s plea deal. Following Gowdy’s trial, the State indicated its intent to amend Gowdy’s indictment to reflect recently discovered prior convictions in Iowa; the State was uncertain as to whether the amendment would reflect his habitual-offender status pursuant to Mississippi Code Annotated section 99-19-83 or Mississippi Code Annotated section 99-19-81. Id. at 544 (¶ 15). Two months after Gowdy was convicted, the State filed its motion to amend his indictment to reflect his habitual-offender status under Mississippi Code Annotated section 99-19-83 requiring a mandatory life sentence. Id. at 544-45. Gowdy appealed, and the supreme court vacated his enhanced penalty and remanded the case for resentencing. Id. at 546 (¶22). The supreme court acknowledged that Rule 7.09 “does not speak to the timing of the amendment, only that the defendant must be ‘afforded a fair opportunity to present a defense’ and ‘not [be] unfairly surprised.’ ” Id. at 545(¶ 16). The supreme court also noted that Uniform Rule of Circuit and County Court 11.03(1) “requires that an indictment ‘must allege with particularity the nature or description of the offenses constituting previous convictions, the state or federal jurisdiction of any previous convictions, and the date of judgment,’ and failure to comply with this rule will result in reversal of the enhanced sentence.” Id. at 546 (¶ 20) (citing Ormond v. State, 599 So.2d 951, 962-63 (Miss.1992)). The supreme court found that Gowdy’s original indictment “alleged that Gowdy previously had been convicted of two DUIs, but, before trial, the State amended the indictment to add a third prior DUI conviction.” Id. at 542 n. 1. It was based on this reasoning that the supreme court found the amendment to Gow-dy’s indictment constituted an unfair surprise. Id. at 545 (¶ 19).
¶ 16. This case is factually distinguishable from Gowdy. Unlike the current case, Gowdy had not been charged as a habitual offender until after his guilty verdict and conviction. Powell was aware that he was being indicted as a habitual offender by his original indictment. Further, the State did not attempt to add an additional crime to elevate Powell’s indictment because the original indictment contained, with specificity, all of Powell’s past convictions. Also, unlike the Gowdy case, the State moved to amend Powell’s indictment prior to commencement of trial as opposed to after conviction. All these facts distinguish this case from Gowdy. Therefore, we find that Powell was not unfairly surprised or prejudiced by the amendment of his indictment as a habitual offender under Mississippi Code Annotated section 99-19-83.
¶ 17. We find this issue is without merit.
II. Fifth Amendment
¶ 18. Powell next asserts that Investigator Stepro’s testimony violated his Fifth Amendment rights. He submits that the Fifth Amendment guarantees him the right to remain silent and the right to not provide evidence against himself. Relying on Quick v. State, 569 So.2d 1197, 1199, (Miss.1990), Powell argues it was improper and reversible error for the State to comment on his silence after he invoked his right to remain silent as it may deprive him of his right to due process. The standard of review when reviewing the admissibility of evidence is whether the *856 circuit judge abused his discretion in admitting or denying the evidence. McGowan v. State, 706 So.2d 231, 243 (¶ 48) (Miss.1997) (quoting Johnson v. State, 666 So.2d 499, 503 (Miss.1995)).
¶ 19. At issue in this case is the following series of questions and answers during the State’s direct examination of Investigator Stepro:
State: When you encountered Mr. Powell, did you advise him of his rights?
Stepro: Yes, I did.
State: Did he agree to give you a statement?
Stepro: Yes, he did. He came to the police department and gave me a statement.
State: What was the substance of that statement?
Stepro: Basically said that he had come to Mississippi and that he had stayed at the hotel by Sav-A-Center, the old Sav-A-Center. I asked him about Don Wilson picking him up from the hotel, and he said that Don had picked him up several — on several occasions.
State: From the hotel there?
Stepro: From the Hotel.
State: Okay.
Stepro: And then he said that he wasn’t going to say anything. We didn’t have anything to arrest him one, then, you know — if we had anything to arrest him on, to arrest him because he—
State: Did you stop the interview then?
Stepro: Did I stop it?
State: Yes.
Stepro: No.
State: What else did you say?
Stepro: He said he was not going to tell us the truth about something he did wrong, nor was he going to do anything for us to help put him away. And I told him, I said “Danny, you’re on the video plain as day coming in and out of the hotel.”
State: Did he at that point end the interview?
Stepro: He made a statement that if he was on—
The Court: Excuse me. One second, ma’am. Can counselors approach?
At this point, the jury was excused, and the State informed the circuit judge of the anticipated testimony. Investigator Ste-pro would have testified that Powell “asked if we had anything on him, to arrest him because he was not going to say anything on tape” and requested that the tape be stopped. Powell then moved that anything after the request to stop the tape should be suppressed, and the circuit judge granted that motion. The circuit judge further stated that Investigator Ste-pro was “not to discuss in front of the jury anything that was stated ... after [Powell] says ‘if you have anything on me, arrest me.’ ” Investigator Stepro complied, and no mention of Powell’s statements after he requested the tape be stopped was made when her testimony resumed.
¶ 20. Powell argues that Investigator Stepro’s comments made in front of the jury regarding whether or not he was going to admit any wrongdoing could be deemed as a protest to any allegation of wrongdoing. Powell further asserts that although the circuit judge subsequently suppressed this line of testimony, the jury still heard that Powell “was not going to tell [the police] the truth about something he did wrong[,]” and this statement was highly prejudicial to him as it could be considered incriminating or proof of his guilt. As such, Powell argues that this testimony was in violation of his Fifth Amendment right not to provide evidence against himself.
*857 ¶ 21. We recognize that it is not proper to comment on the post-Miranda silence of an accused and violation of this is often found to be reversible error. See Gossett v. State, 660 So.2d 1285, 1291 (Miss.1995); Quick, 569 So.2d at 1199. However, there are instances in which such violation could be deemed harmless error. In Byrd v. State, 977 So.2d 405, 411 (¶ 19) (Miss.Ct.App.2008), this Court found that the testimony regarding Nancy Byrd’s and Wendy Byrd Miller’s rights to remain silent was harmless error because their silence was not being used against them and only one reference to their silence was made in front of the jury. Similarly, in Hope v. State, 992 So.2d 666, 672 (¶ 22) (Miss.Ct.App.2008), this Court held that Cleveland Hope was not “prejudice[d] as a result of Investigator Bland’s statement. Investigator Bland’s statement was not a comment on Hope’s failure to testify.” Also in Byrd, this Court found that “Investigator Bland’s statement ‘did not invite the jury to consider the fact that [Hope] did not give a statement as evidence of his guilt. Instead, [Investigator Bland] was simply explaining why he had been unable to identify and locate the man who was with [Hope].’” Id. First, and foremost, Powell made no contemporaneous objection to Investigator Stepro’s comments. It was the circuit judge who interrupted Investigator Stepro’s testimony and later sustained Powell’s objection to that line of testimony when the jury was excused. According to the supreme court case Goff v. State, 14 So.3d 625, 655 (¶ 118) (Miss.2009) (citing Wells, 903 So.2d at 742 (¶ 6)), “issues not presented to the trial court for lack of contemporaneous objection are procedurally barred, and error, if any, is waived.” Further, Powell neither requested the circuit judge give the jury a curative instruction on that line of testimony nor moved for a mistrial. Additionally, Investigator Stepro only made one comment regarding Powell’s refusal to give a statement, and the statement was not made to prove that Powell did not give a statement because he was guilty. Further, the evidence presented at trial beyond Investigator Stepro’s comments about Powell’s refusal to give a statement was more than sufficient for a jury to find him guilty of burglary; therefore, her comment was harmless beyond a reasonable doubt. Based on our review of the record, we cannot say that Investigator Stepro’s comments deprived Powell of a fair trial or prejudiced him in any way. This issue is without merit.
III. Motion for a New Trial
¶ 22. Lastly, Powell argues that the circuit court erred in denying his motion for a new trial. The standard of review this Court applies when reviewing a motion for a new trial is whether the circuit court abused its discretion when denying the motion. Johnson v. State, 42 So.3d 53, 57 (¶ 14) (Miss.Ct.App.2010). A motion for a new trial is a challenge to the weight of the evidence; therefore, the circuit court will only be reversed when the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (quoting Wilkins v. State, 1 So.3d 850, 854 (¶ 11) (Miss.2008)). Further, all evidence must be viewed in a light most favorable to the verdict. Id.
¶ 23. Powell argues that there were other inferences that could be drawn from the evidence. For example, the stolen property recovered from the shed could have been placed there by someone else because the shed was often a hangout spot for other people and someone else also had a key to the shed. Powell next argues that Investigator Stepro did not consider anyone else involved as a suspect even though the other people could have been further developed as a suspect. His final *858 assertion to support this issue is that the evidence was primarily testimony of non-credible witnesses, evidence from a shed on someone else’s property that others had access to, and a fuzzy surveillance camera video.
¶ 24. It is well established “that the jury is responsible for judging the credibility of witnesses and the weight that should be attached to their testimony.” Price v. State, 892 So.2d 294, 297 (¶ 15) (Miss.Ct.App.2004) (quoting Jackson v. Daley, 739 So.2d 1031, 1039 (¶ 29) (Miss.1999)).
¶ 25. In this case, the jury was presented with testimony from several witnesses, and based on the testimony and evidence presented at trial, the jury found Powell guilty of the crime of burglary. The supreme court adopted a four-part test when evaluating the strength of the inference that can be drawn from possession of stolen property. Presley v. State, 994 So.2d 191, 194-95 (¶ 16) (Miss.Ct.App.2008) (citing Shields v. State, 702 So.2d 380, 382 (Miss.1997)). The test is as follows:
1. The temporal proximity of the possession to the crime to be inferred;
2. The number or percentage of the fruits of the crime possessed;
3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
Id. at (¶ 16). Applying the temporal proximity part to the facts in the current case, the evidence presented at trial was that Powell’s home was where a majority of the stolen items were found and that testimony from other witnesses linked Powell to possession of several other stolen items. Powell argues that since other people had limited access to the shed that they may have planted the item. However, there was testimony at trial that no one hung around the shed after Powell moved in; and only Powell and Wilson, his landlord, had a key to the shed. The next part of the test involves “the number or percentage of the fruits of the crime possessed[.]” Id. As was discussed above, several items were found in Powell’s home and several other items were seen in his possession after the burglary. The third part of the test involves “the nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge[.]” Id. The evidence presented at trial showed that Powell possessed clothing and the bicycle matching the ones in the surveillance video and that he tried to hide behind some bushes when Pressgrove walked by the following morning. Lastly, Powell provided no explanation of how the stolen property was in his possession and in his home.
¶ 26. Based on the application of this case’s facts to the Presley test and our review of the record, we find that the jury’s verdict is not against the overwhelming weight of the evidence so as to cause an unconscionable injustice. This issue is without merit.
¶ 27. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY AND SENTENCE, AS A HABITUAL OFFENDER, OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
*859 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.