¶ 1. Trevor Jackson appeals his conviction for burglary of a storehouse. After the jury found Jackson guilty, the trial court sentenced him as a habitual offender and imposed a life sentence. On appeal, Jackson raises two issues. First, Jackson contends that the trial court erred in permitting the district attorney to amend the indictment the day of the trial to include the habitual offender sentence enhancement. Second, Jackson argues that the trial court erred in failing to grant his motion for a directed verdict and his motion for a judgment notwithstanding the verdict.
 FACTS AND PROCEDURAL HISTORY ¶ 2. On the morning of November 4, 2003, an employee of the Super Saver Food Store in Centerville, Mississippi, arrived at work to find that someone had broken into the store through an air-conditioning duct some time after closing the night before and had stolen cash from the employees' lockers. The employee contacted the owner, who then contacted the police. The owner advised the police that each employee placed that day's cash receipts into his or her designated locker. He estimated that $3000 had been taken from the store.
 ¶ 3. The store was monitored twenty-four hours a day by a security camera. The owner produced the tape, and he and the police chief walked the short distance to the owner's residence to watch it. The surveillance tape showed a man walking back and forth in the store after hours. The man held a white towel over his face. The police chief testified that he immediately recognized Trevor Jackson as the intruder in the videotape based on the man's mannerisms, walk, and build. The chief subsequently showed the videotape to several other officers, who agreed that the intruder was Jackson.
 ¶ 4. Based on their identification of Jackson from the video, the Centerville police department obtained an arrest warrant for Jackson. On November 6, 2003, police arrested Jackson at his girlfriend's apartment. Jackson's girlfriend gave the police permission to search her apartment. In their search of the apartment, Centerville police discovered clothes and shoes believed to have been worn in the burglary and $999 dollars in cash.[1] A search of the girlfriend's car also produced a white towel.
 ¶ 5. Jackson was indicted on February 25, 2004. The indictment charged Jackson with one count of Burglary of a Storehouse. Trial was set for October 6, 2004. A day before the trial, the district attorney filed a motion to amend the indictment to charge Jackson as a habitual offender, an amendment that would allow the court to sentence Jackson to life in prison if a jury found him guilty at trial. The trial court conducted a hearing on the motion to amend the indictment on the morning of trial.
 ¶ 6. Jackson's attorney opposed the motion to amend as untimely. He argued that he was entitled to five days' notice on the motion and stated that he was unaware of the motion until the morning of trial. The *Page 749 
district attorney stated that he had discussed the amendment with Jackson and his attorney in June 2004 but had opted not to file the amendment earlier as an incentive to encourage Jackson to consider a plea agreement. The district attorney stressed that the amendment itself was not a surprise to Jackson.
 ¶ 7. In response;, Jackson's attorney stated as follows:
 Judge, I'm not denying that we did discuss the possibility of the amendment to the indictment, I'm just saying that I feel like with any other motion, I'm due my five days of notice. Certainly, if they would have amended the indictment a week ago, or a month ago, two months ago, we could still entertain the plea possibilities.
The trial court held that amendments to indictment could be made on the day of trial, provided that the defendant was not unfairly surprised by the amendment. The trial court concluded that the amendment was proper, as Jackson had prior notice of the possibility of the sentence enhancement.
 ¶ 8. The trial court added, however, that under the circumstances, he would agree that Jackson should be able to enter into the previously discussed plea agreement and would, in fact, permit Jackson to do so. Jackson and his attorney discussed that option, both in open court and off the record. Jackson, decided that he wanted to proceed to trial.
 ¶ 9. During the trial, the Centerville police chief and two officers testified that they recognized Jackson's mannerisms, walk, and build from the video. The State also introduced the clothing and the money found in Jackson's girlfriend's apartment.
 ¶ 10. At the close of the State's case, Jackson's attorney made a motion for a directed verdict, which the trial court denied. Jackson rested without conducting a defense, and the case was submitted to the jury. The jury returned a verdict of guilty, at which time Jackson's attorney made a motion for judgment notwithstanding the verdict. The trial court denied that motion as well and sentenced Jackson to life in prison.
 STANDARD OF REVIEW ¶ 11. Jackson's first issue, the trial court's decision to permit the district attorney to amend the indictment the day of the trial, is an issue of law and "enjoys a relatively broad standard of review." Peterson v.State, 671 So.2d 647, 652 (Miss. 1996).
 ¶ 12. With regard to Jackson's second issue, both a motion for directed verdict and a motion for judgment notwithstanding the verdict "implicate the sufficiency of the evidence."Gleeton v. State, 716 So.2d 1083, 1087 (¶ 14) (Miss. 1998). Accordingly, the Court must,
 with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id.
I. Amendment of the Indictment
 ¶ 13. Jackson argues that he was unfairly surprised by the motion to amend the indictment. Additionally, Jackson argues that while the court addressed the issue with Jackson's trial counsel at the *Page 750 
hearing, the trial court never asked Jackson directly whether he knew of the district attorney's intention to amend the indictment to name Jackson as a habitual offender.
 ¶ 14. Uniform Circuit and County Court Rule 7.09 governs the amendment of indictments. The rule states as follows:
 All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement. . . . Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
UCCCR 7.09. In Mississippi, "[i]t is permissible to amend the indictment on the date of trial and to charge the defendant as a habitual criminal under Mississippi Code Annotated § 99-19-83, when defense counsel is aware of the State's intentions and the defendant is fully aware of the State's intentions during plea negotiations." Forkner v. State, 902 So.2d 615,624 (¶ 28) (Miss.Ct.App. 2004) (citing Ellis v. State,469 So.2d 1256 (Miss. 1985)).
 ¶ 15. During the hearing on the motion to amend, the trial court recited the prohibition against amendments that unfairly surprise a defendant and questioned Jackson's counsel accordingly. Jackson's counsel advised the trial court that he was aware that the district attorney was considering amending the indictment to include the enhanced sentence. The trial court then stated that given the timing of the filing of the motion, he would give Jackson the opportunity to reconsider the plea agreement that the district attorney offered during plea negotiations. Jackson and his attorney spoke both on and off the record regarding the plea agreement, and Jackson advised the trial court that he wanted to proceed to trial.
 ¶ 16. The Court holds that the trial court did not err in granting the district attorney's motion to amend the indictment. Jackson's counsel admitted that he was aware that the district attorney was considering amending the indictment to name Jackson as a habitual offender in June 2004. The trial court also asked Jackson if he was aware of the impact of the amendment and gave him time to discuss the amendment with his attorney. The Court finds no error in Jackson's assertion that the trial court failed to question Jackson directly regarding his knowledge during plea negotiations of the district attorney's intent to amend the indictment. Moreover, any error in the trial court's decision not to question Jackson directly regarding his knowledge of the district attorney's intent during plea negotiations was corrected by the trial court's statement that it would reopen the plea negotiations to permit Jackson to take the plea agreement previously discussed by the parties. Jackson and his counsel discussed that option, and Jackson rejected it.
 II. Denial of the motion for a directed verdict and motion for judgment notwithstanding the verdict.
 ¶ 17. Jackson contends that the trial court erred in denying his motion for a directed verdict and his motion for judgment notwithstanding the verdict for the following reasons: (1) the amount of money found on Jackson at the time of his arrest ($999) was significantly less than the $3000 that the store owner testified was taken during the burglary; (2) the police chief and other officers' identification of Jackson by his walk and his mannerisms from the store surveillance tape was suspect; and (3) police could not conclusively *Page 751 
identify the clothing and shoes seized from Jackson as those worn by the suspect in the surveillance video.
 ¶ 18. Applying the appropriate standard of review cited inGleeton, the Court cannot find that the trial court erred in denying Jackson's motions. Both the motion for a directed verdict and the motion for judgment notwithstanding the verdict address the sufficiency of the evidence. The police chief and two other officers testified that they recognized Jackson from the store's surveillance video. Based on their identification, the police obtained an arrest warrant. The search of the apartment where Jackson was arrested turned up $999 and several items of clothing similar to those worn by the suspect in the surveillance video. The jury apparently accepted the testimony of the police officers in returning a guilty verdict. Giving the prosecution the benefit of all inferences which support the verdict and relying on the jury to address all matters of weight and credibility of the evidence, the Court finds that Jackson's second point of error is without merit.
 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF WILKINSONCOUNTY OF CONVICTION OF BURGLARY OF A STOREHOUSE AND SENTENCE OFLIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS AS A HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THISAPPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
[1] Jackson was asleep at his girlfriend's apartment when the police arrived. The cash was in a bag on the bed where Jackson had been sleeping. The $999 recovered was divided into forty (40) twenty-dollar bills and 199 one-dollar bills. The one-dollar bills were bound in bank wrappers.