# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-00944-SCT

*J.C. WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2009 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENTS OF THE COURT OF APPEALS AND THE CIRCUIT COURT OF JONES COUNTY ARE AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF CONVICTION OF SALE OF COCAINE IS AFFIRMED, THE SENTENCE IS VACATED AND THE CASE IS REMANDED TO THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY FOR RESENTENCING - 02/13/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

   **EN BANC.**

   **RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     J. C. Williams was convicted of the sale of cocaine in the Circuit Court of Jones County, Mississippi. Williams was adjudicated a habitual offender[1] and a subsequent drug offender.[2] Upon application of those recidivist statutes, his sentence was enhanced to forty years in the custody of the Mississippi Department of Corrections (MDOC), with thirty years to serve and ten years suspended. On appeal, Williams argued that the circuit court "erred in amending the indictment to charge him as a habitual offender." ***Williams v. State***, __ So. 3d __, 2012 WL 6013820, at *1 (Miss. Ct. App. Dec. 4, 2012). The Court of Appeals rejected that argument and unanimously affirmed Williams's conviction and sentence. ***Id***. Following the Court of Appeals' denial of Williams's motion for rehearing, he filed this *pro se* petition for writ of certiorari, which this Court granted. ***Williams***, 119 So. 3d 328 (Miss. Aug. 22, 2013).

### FACTS AND PROCEDURAL HISTORY

¶2.     Williams was indicted by a grand jury of "willfully, unlawfully, feloniously and knowingly sell[ing] or transfer[ing] [c]ocaine (less than .1 gram) . . . ." *See* Miss. Code Ann. § 41-29-139 (Rev. 2013). His indictment made no mention of habitual-offender status. Three days before trial, the State filed a motion to amend the indictment to charge Williams as a recidivist pursuant to Mississippi Code Section 99-19-81.[3] The motion was served on defense

---

[1]*See* Miss. Code Ann. § 99-19-81 (Rev. 2007).

[2]*See* Miss. Code Ann. § 41-29-147 (Rev. 2013).

[3]In 1998, Williams pleaded guilty to robbery in the Circuit Court of Jones County (Cause No. 10,407). He was sentenced to ten years in the custody of the MDOC, with six

counsel the same day. The circuit court granted the State's motion to amend the indictment following jury selection.[4] Subsequently, Williams was found guilty of the sale of cocaine and sentenced on the same day, as a recidivist, to forty years in the custody of the MDOC, with thirty years to serve and ten years suspended.[5]

¶3.     Williams appealed his sentence as a habitual offender, arguing that the circuit court "erred in amending the indictment to charge him as a habitual offender." **Williams**, 2012 WL 60113820, at *1. In unanimously affirming Williams's conviction and sentence, the Court of Appeals held:

> Williams has offered no evidence to show he was "unfairly surprised" by the amendment or that he was unable to present a defense. Furthermore, since an amendment charging a defendant as a habitual offender does not affect the substance of the crime charged, but only the sentencing, Williams's defense to the sale-of-cocaine charge was unaffected by the amendment.

**Id**. (citing **Adams v. State**, 772 So. 2d 1010, 1020-21 (Miss. 2000)).

¶4.     Williams's motion for rehearing was denied by the Court of Appeals, and he filed his *pro se* petition for writ of certiorari, which we granted.

_____

years to serve, four years suspended, and four years of probation.

In 2007, Williams pleaded guilty to sale of cocaine in the Circuit Court of Jones County (Cause No. 2005-143-KR2). He was sentenced to ten years in the custody of the MDOC, suspended except for time served, upon completion of three years post-release supervision and community service.

[4]Williams's counsel objected to the amendment on the ground that the State sought to amend the indictment to include habitual-offender status for the purpose of "punish[ing] the defendant in exercising his constitutional right for a trial."

[5]Absent his recidivist history, Williams faced a sentence of "not more than thirty (30) years[.]" *See* Miss. Code Ann. § 41-29-139(b)(1) (Rev. 2013).

## ISSUE

¶5.     On writ of certiorari, we will address the following issue:

Whether the circuit court erred in granting the State's motion to amend the indictment to charge Williams as a recidivist.

## ANALYSIS

¶6.     "The circuit court's decision to allow an indictment to be amended is a question of law." *Powell v. State*, 80 So. 3d 849, 852 (Miss. Ct. App. 2012) (citing *Jackson v. State*, 943 So. 2d 746, 749 (Miss. Ct. App. 2006)). "Questions of law receive a de novo review." *Id*. (citing *Jones v. State*, 912 So. 2d 973, 975 (Miss. 2005)).

¶7.     Presently, Uniform Rule of Circuit and County Court 7.09 provides, in pertinent part, that "[i]ndictments may . . . be amended to charge the defendant as an habitual offender . . . ." URCCC 7.09. "Rule 7.09 'does not speak to the timing of the amendment[.]'" *McCain v. State*, 81 So. 3d 1055, 1061 (Miss. 2012) (quoting *Gowdy v. State*, 56 So. 3d 540, 545 (Miss. 2011)). But the rule implicitly recognizes a right to fair notice by prohibiting amendments to indictments where the defendant is not "afforded a fair opportunity to present a defense" or is "unfairly surprised[.]" URCCC 7.09. This Court recently has held that "adequate notice is achieved through formal pleadings which include the specific amendment to be offered and which are filed sufficiently in advance of trial to ensure that a defendant will have a 'fair opportunity to present a defense' and will not be 'unfairly surprised.'" *Boyd*

4

***v. State***, 113 So. 3d 1252, 1256 (Miss. 2013) (quoting URCCC 7.09).[6] Whether notice of a possible enhanced sentence was given sufficiently in advance of trial "should be considered on a case-by-case basis." ***McCain***, 81 So. 3d at 1061.[7]

¶8.     Williams never argued before the trial court that he was not prepared to defend or was surprised by the State seeking enhanced punishment under the recidivist statutes. *See supra* n.4. As noted by the Court of Appeals, "[o]n appeal, Williams . . . offered no evidence" that he was not provided adequate notice. ***Williams***, 2012 WL 6013820, at *1. Likewise, in his petition for certiorari to this Court, Williams has argued that the Court of Appeals erred in finding that he was not "unfairly surprised[,]" but again has failed to argue why his notice was inadequate.

---

[6]In ***Boyd***, this Court found inadequate notice where the State informed the defendant "during pretrial proceedings on the morning of trial that, if a conviction was obtained, the State would seek to sentence him as a subsequent offender." ***Boyd***, 113 So. 3d at 1256.

[7]The dissent opines that the amendment elevated the level of the offense charged in the indictment; thus infringing on the power of the grand jury. While we share in the dissent's ardent respect for the sole authority of the grand jury to issue an indictment, our disagreement stems from what is constitutionally mandated to be included within that indictment. The United States Supreme Court has held that "[a]n indictment must set forth each element of the of the crime that it charges . . . . But it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." ***Almendarez-Torrez v. United States***, 523 U.S. 224, 228, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). Our Court consistently has held that recidivist statutes "are not criminal offenses and only affect sentencing." ***Osborne v. State***, 404 So. 2d 545, 548 (Miss. 1981). As such, prior convictions which are utilized only to enhance the sentence of a recidivist, *i.e.*, those prior convictions which do not constitute elements of the underlying offense, are not constitutionally mandated to be included within the indictment. It is only a rule of this Court which necessitates such inclusion – and another rule of this Court which allows that inclusion to be accomplished by amending the indictment. *See* URCCC 11.03, 7.09.

¶9. Notwithstanding Williams's failure to present this argument, we will address the existence of adequate notice, *vel non*, in the record before us. Through formal pleadings filed three days in advance of trial, the State informed Williams of its intent to seek enhanced punishment under one of Mississippi's recidivist statutes, Section 99-19-81. The State's motion specifically provided the details of the prior convictions which would be presented to the trial judge for sentence enhancement (subject to a conviction for the crime charged in the indictment), including the cause numbers, dates, and courts in which they were obtained. Absent an argument as to why Williams's notice was inadequate, we cannot say, based on the record, that the State failed to provide adequate notice of its intent to seek enhanced punishment for Williams as a recidivist under Section 99-19-81.

¶10. However, we cannot reach the same conclusion as to Williams's enhanced sentence as a subsequent drug offender under Section 41-29-147. The State's motion placed Williams on notice that it intended to utilize his prior drug conviction, but only for sentence enhancement under Section 99-19-81. The State did not offer the "specific amendment" to charge Williams as a subsequent drug offender. *Boyd*, 113 So. 3d at 1256. Williams was first apprised of that enhancement at his sentencing hearing when the State informed the trial court that he faced a "maximum sentence . . . of 60 years" – double what he faced if sentenced only as a habitual offender under Section 99-19-81. Because Williams was not given proper notice in advance of trial of the State's intent to seek enhanced punishment as a subsequent drug offender under Section 41-29-147, we are compelled to reverse that portion of his sentence.

## CONCLUSION

¶11. Williams was provided adequate notice in advance of trial that, upon conviction, the State intended to seek enhanced punishment under Section 99-19-81. However, the State failed to provide adequate notice of its intent to seek enhanced punishment under Section 41-29-147. Thus, we affirm in part and reverse in part the judgments of the Court of Appeals and the Circuit Court of Jones County and remand this case to the Circuit Court of Jones County for a new sentencing hearing, where Williams is to be resentenced as a habitual offender under Section 99-19-81 only.

¶12. **THE JUDGMENTS OF THE COURT OF APPEALS AND THE CIRCUIT COURT OF JONES COUNTY ARE AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF CONVICTION OF SALE OF COCAINE IS AFFIRMED, THE SENTENCE IS VACATED AND THE CASE IS REMANDED TO THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY FOR RESENTENCING.**

**WALLER, C.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.; WALLER, C.J., JOINS IN PART.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶13. The majority rightly concludes that Williams was not provided timely notice that the State would seek enhancement of his sentence as a subsequent drug offender and that, for want of proper pretrial notice of the State's intention in that regard, this portion of his sentence should be reversed. Accordingly, I concur with this aspect of the majority opinion.

7

Moreover, I would affirm Williams's conviction of the unlawful sale of cocaine, but not as an habitual offender.

¶14. I do not agree with the majority's approval of the trial court's amendment of the grand jury's indictment, which was requested in a motion filed by the prosecution some time during the Friday before the trial was to begin on the following Monday morning.

¶15. In the present case, Williams was charged with the sale of cocaine, a felony, by the grand jury of the Second Judicial District of Jones County. Although he previously had been convicted in that same jurisdiction and sentenced to serve significant penitentiary terms for two separate and distinct felonies, the grand jury indictment that was returned on March 3, 2009, did not charge Williams as an habitual criminal. It was not until more than seven months later, on Friday, October 9, 2009, that the prosecution filed a motion asking the trial court to elevate the charge by amending the indictment to charge Williams as an habitual offender pursuant to Mississippi Code Section 99-19-81, which exposed Williams to a mandatory thirty-year sentence without possibility of reduction, suspension, or eligibility for parole or probation. The record suggests that the prosecutor had contemplated such a motion at least ten days before it actually was filed and copied to defense counsel; the circuit clerk's certifications of the two prior sentencing orders–one for robbery in 1998 and the other for cocaine sale in 2007–were dated September 29, 2009. Thus, after having failed to obtain the grand jury's approval of proceeding against Williams as an habitual offender, then having waited from very early in March until very late in September to secure the necessary documentation of Williams's eligibility for habitual-offender status, the prosecutor bided his

8

time for another ten days and sprang his ambush on the accused and his attorney when, at most, some seventy-two hours remained before the scheduled commencement of trial, during most of which the courthouse would be closed for the weekend.

¶16.   Throughout nearly two centuries of jurisprudence in Mississippi, the grand jury–not the prosecutor and not the circuit judge–has been the only legal entity authorized to bring felony charges into circuit court and this by means of indictments duly considered and approved by at least twelve members of the grand jury at times when at least fifteen of the grand jurors are present and participating.[8] Miss. Const. art. 3, § 27 ("No person shall, for any indictable offense, be proceeded against criminally by information, except . . . where a defendant represented by counsel by sworn statement waives indictment . . ."). This Court has recognized that the singular power of indictment possessed by the grand jury is rooted in the bedrock constitutional framework of both our national and state constitutions. *See State v. Berryhill*, 703 So. 2d 250, 258 (Miss. 1997) ("The rule that absent waiver only a grand jury can charge a person with a crime such as burglary is found explicitly in the Fifth Amendment of the United States Constitution in cases of infamous crimes, and in Article 3, § 27 of the Mississippi Constitution.") (citing *State v. Sansome*, 97 So. 753, 754 (Miss. 1923) (holding that Article 3, § 27, requires indictments for all felonies)).

---

[8]Miss. Code Ann. § 99-7-9 (Rev. 2007) ("All indictments . . . must be . . . accompanied by [the grand jury foreman's] affidavit that all indictments were concurred in by twelve (12) or more members of the jury and that at least fifteen (15) were present during all deliberations . . .").

¶17. Though some may contend that an allegation of a criminal defendant's status as an habitual offender under Sections 99-19-81 or 99-19-83 does not constitute a charge, or part of a charge, it is, nevertheless, an unproven accusation in the selfsame way as every other aspect of an indictment's charging language. Indeed, in this case, the prosecutor's eleventh-hour motion asked the trial judge to amend the indictment "to *charge* the defendant as a habitual offender" and the trial court's order granting that motion authorizes "amending the Indictment in the above styled and numbered cause *charging* the defendant with Sale of Cocaine as a habitual offender, as the defendant has two prior felony offenses justifying such an enhancement under Mississippi Code Section 99-19-81." (Emphasis added.) Clearly, the enhancement of a charge becomes part and parcel of the charge.

¶18. Although this Court, in recent years, seems to have opened the door for the liberal and late-in-the-game amendment of indictments without the knowledge or consent of the grand jury,[9] the applicable rule itself–Uniform Circuit and County Court Rule 7.09–seems self-contradictory by saying in the first instance that indictments may be amended as to form but not as to the substance of the offense charged, then authorizing the *charging* of the defendant as an habitual offender or by elevating the level of the offense by placing the accused in jeopardy of a substantially greater penalty, and this in the absence of any finite limitation upon the time that such charging can be done. *See* URCCC 7.09 ("All indictments may be amended as to form but not as to the substance of the offense charge. . . . [However,]

---

[9]*See **McCain v. State**,* 81 So. 3d 1055 (Miss. 2012).

10

[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised."). Rule 7.09, though undoubtedly well-intentioned, was ill-conceived. Judges and lawyers can engage in endless academic quibbling about what is substantive and what is not; but it is hard to imagine anything more substantive than a prison sentence, or the length of it.

¶19.    During most of our state's history, some minor amendment of grand jury indictments was permitted, on a very limited basis, by statute:

> [w]henever, on the trial of an indictment for any offense, there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, . . . it shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and proceedings in the court to be amended according to the proof . . . .

Miss. Code Ann. § 99-17-13 (Rev. 2007); Miss. 1942 Code Ann. § 2532 (Rev. 1956). But the judicial elevation of a charge laid in an indictment, whereby an indicted defendant could become exposed to a greater sentence than that provided for the offense with which the grand jury had charged him, was unknown.  For example, a murder charge could be reduced to manslaughter; but a manslaughter charge could not be increased to murder.  That is true today; and, moreover, a person who has been indicted for murder cannot have that charge amended or upgraded to a charge of capital murder, unless, of course, *the grand jury* does it.  While this dissenting opinion may be criticized for "comparing apples to oranges"–and, admittedly, these illustrations do not precisely fit the case at hand–nevertheless, experienced

11

criminal law practitioners will readily understand that, conceptually, the comparison is an apt one.

¶20. It is of far greater significance that this move by the prosecution to amend Williams's indictment would generate the need for a drastically different defense strategy, including a studied and fervent effort to reach a palatable compromise with the State and thus avoid the possibility of a mandatory, day-for-day sentence of thirty years. However, when this bombshell of a motion was delivered, it likely was too late for that.[10] Indeed, the district attorney's office did not have to request, then await the arrival, of documentation of Williams's conviction records from some distant state, or from a federal court. The documents were right there, among the public records in the Jones County circuit clerk's office.

¶21. Further, it is not inconceivable that the district attorney's office itself had maintained files from its earlier prosecutions of Williams, and those files surely would have pointed the prosecution team to the relevant permanent records in the local circuit clerk's office. Thus, it would not have been at all difficult for the district attorney to ask the grand jury to charge Williams as an habitual offender on the front end of the case, rather than cobbling the

---

[10]As noted above, the State obtained certified copies of the sentencing orders from Williams's prior offenses on September 29, 2009, ten days before the State's motion to amend the indictment was filed on October 9, 2009. Whatever the State's reason for delaying the filing of the motion to amend and waiting until the Friday before trial was to begin on Monday, October 12, 2009, the State's procrastination should not be countenanced by this Court. By obtaining this material from the circuit clerk, the State had begun the process of seeking a game-changing amendment of the charge against Williams. But Williams and his attorney had no clue of the State's intention until ten days later.

habitual-offender allegations onto the indictment at the tail end of things, on the very eve of trial. Since the grand jury, not the prosecutor and not the judge, is the proper entity for bringing felony charges, this would have placed the horse before the cart and would have avoided the awkward mess which this case presents.

¶22. The overarching problem in this case is one of fundamental unfairness. If the grand jury had charged Williams with the sale of cocaine as an habitual offender, listing his prior felony convictions and the statutorily required data about them, the accused and his counsel would have known in early March what they were facing and could have prepared accordingly. Instead, they did not know until some time on the last business day before trial that, if convicted, Williams would receive a mandatory thirty-year sentence which he would be required to serve day for day. Less than two years earlier, on November 9, 2007, Williams had been sentenced, in the same court, to serve ten years for sale of cocaine, the same offense for which he had been indicted in the instant case. Somehow, Williams was out of prison, charged with selling cocaine again, on October 18, 2008 (this offense, for which he was indicted the following March).

¶23. It was not until the last business day before his trial that he had any reason to believe that he did not at least stand a chance of being that lucky again. Had Williams and his lawyer known in March, when he was served with his indictment, rather than seven months later and mere hours away from trial, that he was to be prosecuted as an habitual offender, it is reasonable to assume that they would have approached the charge with a greatly heightened

13

level of concern, which surely would have included a more intense effort in the realm of plea bargaining.[11]

¶24.  This Court has approved local rules for the Eighteenth Circuit Court District, which is comprised of the Circuit Courts of the First and Second Judicial Districts of Jones County, Mississippi. This trial occurred in the Second District of the county. Rule 4(j) of that court's rules provides: "Attorneys should file and notice motions to be heard well in advance of trial, if possible." Loc. R. 18th Cir. Ct. Dist. 4(j). The record is devoid of any indication that it was not possible for the State to have filed its motion to amend the indictment "well in advance of trial," which it surely did not do. While the majority references the opinion of the Court of Appeals, which notes, "'[o]n appeal, Williams . . . offered no evidence' that he was not provided adequate notice," and that he does not put forth an argument to this effect in his certiorari petition to this Court, it seems self-evident that a game-changing motion such as this, dropped on a defendant when his trial was only a weekend away, constituted an unfair surprise by definition. *See* **Williams v. State**, __ So. 3d __, 2012 WL 6013820, at *1 (Miss. Ct. App. Dec. 4, 2012).

---

[11]Indeed, Rule 8.04(B) of the Uniform Circuit and County Court Rules states that "[t]he prosecuting attorney is *encouraged* to discuss and agree on pleas which may be entered by the defendant." URCCC 8.04(B) (emphasis added). As the indictment can always be amended to *reduce* a charge, the better practice of prosecuting attorneys would be to charge the defendant as an habitual offender in the indictment and use that as a bargaining tool, as opposed to "punish[ing] the defendant in exercising his constitutional right for a trial," which Williams's counsel argued happened in the court below.

¶25. Williams's trial counsel did little to oppose the State's motion, saying only, and without elaboration, "We would object that this is brought on the part of the prosecution to punish the defendant in exercising his constitutional right for a trial." Furthermore, in his post-trial motion for new trial or for judgment notwithstanding the verdict, defense counsel does not mention the untimely amendment of the indictment and, indeed, the motion appears to be a crude adaptation of a motion from some other case.[12] While the quality of representation received by Williams is questionable, this Court does not have sufficient information to assess the effectiveness of his counsel. Such issues are best presented in post-conviction proceedings, should Williams choose to undertake such.

¶26. After a careful review of the record now before us it is not difficult to discern that Williams was denied due process of law under the Fifth and the Fourteenth Amendments to the United States Constitution and Article 3, Section 14, of the Constitution of the State of Mississippi in light of the unfair surprise visited upon him by the extreme untimeliness of the State's motion to amend the indictment and the trial court's granting of it. Accordingly, I would vacate his sentence and remand the case for resentencing for the unlawful sale of cocaine, without the Section 99-19-81 enhancement.

¶27. I therefore concur in part and dissent in part.

---

[12]In the style of the case at the beginning of the motion, an entirely different defendant's name is struck by pen and ink with J. C. Williams's name handwritten in its place. Similarly, the typed cause number is struck through and replaced by the cause number for Williams's case. At two places in the body of the motion, Williams's name is inserted in ink in the place of the name of another defendant with an altogether dissimilar name.

15

**KING, J., JOINS THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.**