# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00980-COA

**CARDARIUS FOSTER HUGHES A/K/A**          **APPELLANT**
**CARDARIUS HUGHES**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2018 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR RE-SENTENCING ON COUNT I; REVERSED AND RENDERED ON COUNT II - 02/11/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. Cardarius Foster Hughes appeals from his conviction and sentence in the Scott County Circuit Court for one count of burglary of a dwelling pursuant to Mississippi Code Annotated section 97-17-23 (Rev. 2014) and one count of burglary of a shed pursuant to Mississippi Code Annotated section 97-17-33(1) (Rev. 2014).[1] Hughes asserts that the trial court erred

---

[1] Hughes does not dispute his conviction on Count I.

in denying his motion for judgment notwithstanding the verdict or, alternatively, a new trial. The record does not contain a ruling from the trial court; however, the motion was deemed denied under Rule 25.3 of the Mississippi Rules of Criminal Procedure. Hughes filed his notice of appeal, and after a review of the record, we affirm Hughes's conviction under Count I, the burglary of a dwelling. We reverse and render his conviction and sentence under Count II, the burglary of a shed. We also vacate the sentence for Count I and remand for re-sentencing for Count I in accordance with the findings of this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     Winnie Lovell Smith and Bobby Gene Smith were born and raised in Scott County, Mississippi. They got married and lived in a house on Measels Road in the county. Family, on both sides, lived near their property. Their son, Steven Smith, lived in LaPlace, Louisiana, and after Bobby passed on, Winnie went to live in LaPlace near Steven. They kept the family home on Measels Road and would stay there periodically. Steven described the house as a two-bedroom trailer; an addition added to the back made it a three-bedroom dwelling. Personal property belonging to the Smiths remained in the home. Steven testified that a roof was placed over the entire house and a carport.  The property had several structures on it, including a shed in the back of the house where they kept a couple of tractors, four-wheelers, lawnmowers, and a smokehouse that housed antiques. The larger shed had a padlock on the front door for security. The three other doors on the shed could not be opened from the outside. Steven's cousin Bridget Nicholson had access to the home and would go by there at times to check on some personal property she had at the house.

2

¶3.    On September 25, 2016, the Smiths were away, and no one was at the house. Hughes and his girlfriend, Stacee Raelynn Holmes, were riding down Measels Road and saw what they believed to be a vacant house. They pulled into the driveway, and Stacee got out of the car. She tried to force her way into the home but could not get in. Hughes got out and went to the front door of the house and then to the back door. He kicked the door in, and they both went inside the house. According to Stacee, they did not see anything that they wanted except a little television. Stacee got the television, took it outside, and put it in the backseat of the car. Stacee then heard a big fight down the road and decided to get in the car and leave because she knew the people and did not want them to see her at the house. She left Hughes on the property, rummaging through the house.

¶4.    Stacee testified that she knew about the shed behind the house; and before she left, she saw Hughes trying to get inside the shed, but it had a padlock on it. She stated that Hughes was using bolt cutters that were in their car. Stacee was gone for about fifteen minutes and did not see the shed broken into or Hughes go inside it. Stacee came back to pick up Hughes, who had a duffel bag with deer cameras in it. Hughes and Stacee did not know the owners of the house and picked it to burglarize because it looked empty.

¶5.    Later that same day, Bridget went to the house to water the plants and to check on things. According to Steven, he learned that the house had been burglarized when Bridget called him right away. Steven went to the house the next day to assess the situation. He found that a big-screen television, three game-trail cameras, tools, an antique BB gun, a pistol, and several other antique items, including knickknacks from around the house, were missing.

Steven testified that the burglar had entered the house through the house-addition's back door by kicking in the door and frame. The padlock on the large shed had been cut and placed back intact to make it look like it was still closed. Steven testified that they did not find anything noticeable missing from the shed.

¶6.     Stacee admitted that the television and the deer cameras stolen from the house were sold by Hughes and Stacee. Steven testified that he did not know Hughes or Stacee. Stacee confirmed the same during her testimony. Steven also testified that neither he nor any other family member gave Hughes or Stacee permission to enter the house or the shed. None of the stolen items were recovered.

¶7.     The Scott County Sheriff's Department arrested Hughes and Stacee on January 5, 2017. Captain Willie Anderson assisted Investigator Billy Patrick with the investigation into the burglary of the Smith home. Anderson and Patrick interviewed Stacee on two occasions. During the first interview on January 6, 2017, Stacee denied Hughes had any involvement because she did not want to implicate him. However, Stacee recanted her statement on January 11, 2017, and admitted to Hughes's involvement in the burglary. Two days later, Anderson brought Hughes into the interview room to question him. He gave Hughes his *Miranda*[2] warning orally as Hughes read the form that acknowledged his right to remain silent. Anderson stated that he also advised Hughes to state his response verbally to each question asked on the form. At the end of the form, Hughes was asked, "Do you wish to talk to us now?" to which Hughes wrote his initials on the "yes" line. Hughes signed the form.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

According to Anderson, Hughes would not write his statement but would orally tell him what happened. During the interview, Hughes told Anderson that he and Stacee were together and went to a particular home on Measels Road. Hughes stated that he kicked down the door and took a television out. He also stated that he took some bolt cutters and cut the lock off the shed. He mentioned that some trail cameras were also taken. Hughes told Anderson that a vehicle came down the road and that Stacee got scared. He told her to leave and that he would meet her down the road. Anderson acknowledged that he brought Stacee into the interview room with Hughes to confront him. However, Stacee testified that Hughes did not admit to any involvement while she was in the room. Anderson testified that the interview was short, lasting thirty minutes at the most.

¶8. On August 1, 2017, a Scott County grand jury indicted Hughes for one count of burglary of a dwelling pursuant to Mississippi Code Annotated section 97-17-23 and one count of burglary of a shed pursuant to Mississippi Code Annotated section 97-17-33(1). On June 13, 2018, after a jury trial, Hughes was convicted of both counts. He was sentenced as a habitual offender to serve twenty-five years for Count I and to serve seven years for Count II. The sentences were set to run consecutively for a total of thirty-two years in the custody of the Mississippi Department of Corrections without eligibility for parole. Hughes filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial. After thirty days with no ruling from the trial court, the motion was deemed denied. Aggrieved by his conviction and sentence, Hughes filed the instant appeal.

**STANDARD OF REVIEW**

¶9.     Our state's Supreme Court has determined our distinct standards for reviewing the denial of a motion for judgment notwithstanding the verdict or, alternatively, a new trial:

> [w]hen reviewing a challenge for sufficiency of the evidence, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [T]he prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.

*Naylor v. State*, 248 So. 3d 793, 796 (¶8) (Miss. 2018) (citations and quotation marks omitted).

> A motion for new trial carries a lower standard of review than that for a challenge to the sufficiency of the evidence. A motion for a new trial simply challenges the weight of the evidence. This Court reviews the lower court's denial of a motion for new trial only if the trial court abused its discretion. Thus, this Court will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Moreover, factual disputes are the province of the jury.

*Cowart v. State*, 178 So. 3d 651, 668 (¶48) (Miss. 2015) (citations and quotation marks omitted).

## DISCUSSION

### I.     The Sufficiency of the Evidence to Support the Verdict on Count II

¶10.    Count II of the indictment charged Hughes with burglary of the Smiths' shed under Mississippi Code Annotated section 97-17-33(1), which states:

> Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale,

6

deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.

"The crime of burglary has two essential elements, the unlawful breaking and entering and the intent to commit some crime once entry has been gained." *Murphy v. State*, 566 So. 2d. 1201, 1204 (Miss. 1990) (citing *Ashley v. State*, 538 So. 2d 1181, 1183 (Miss. 1989)).

¶11.    The essential element of breaking *and entering* is missing from the record in this case. While the evidence demonstrated the padlock on the front door of the shed had been broken, there is no evidence that Hughes ever opened the door and entered the shed. Stacee testified that she saw Hughes with bolt cutters attempting to get inside the shed, but she drove away before she could witness him go inside. Steven also testified that there were no items missing from inside the shed. Moreover, both Steven and Stacee testified that the property stolen was taken from the house. Lastly, Captain Anderson's testimony based upon Hughes's oral statement did not suggest that Hughes went inside the shed. There is no evidence that Hughes entered the shed.

¶12.    Considering the evidence in the light most favorable to the State, we are unable to identify evidence of Hughes entering the shed. "Courts cannot permit a conviction to stand based merely upon suspicion." *Shepherd v. State*, 403 So. 2d 1287, 1288 (Miss. 1981). Therefore, we find that no rational juror could have found Hughes guilty of the crime of burglary of the shed. It was error for the trial court to deny Hughes's motion for a judgment notwithstanding the verdict on this charge. Accordingly, we reverse and render the burglary-

of-a-shed conviction and sentence. *See Hill v. State*, 929 So. 2d 338, 341 (¶9) (Miss. Ct. App. 2005).

## II. Hughes's Sentencing as a Habitual Offender

¶13. After voir dire but before opening statements, the State brought forth a motion to amend the indictment to enhance Hughes's status to that of a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015), which stated:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

"In order to sentence a defendant as a habitual offender, *the accused must be properly indicted as a habitual offender*, the prosecution must 'prove the prior offenses by competent evidence,' and the defendant must 'be given a reasonable opportunity to challenge the prosecutor's proof.'" *Hull v. State*, 174 So. 3d 887, 900-01 (¶43) (Miss. Ct. App. 2015) (emphasis added) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (¶18) (Miss. 2013)).

¶14. Prior to July 1, 2017, Uniform Rule of Circuit and County Court Practice 7.09 did "not speak to the timing of the amendment" and only required that the defendant be "afforded a fair opportunity to present a defense" and "not [be] unfairly surprised." *Newberry v. State*, 85 So. 3d 884, 889 (¶10) (Miss. Ct. App. 2011). In *Newberry*, the trial court ruled on the State's motion to amend the indictment after Newberry's trial and conviction. *Id*. at 886-88 (¶¶4-5). This Court held that the amendment did not result in unfair surprise where the

8

motion was filed six days prior to trial. *Id*. at 889 (¶11). The facts in *Newberry* demonstrated that the defendant received adequate notice where his trial counsel and the court informed Newberry of the State's intention to amend the indictment to sentence him as a habitual offender, and, if convicted, the trial court's only option was to sentence Newberry to life in prison without eligibility for parole. *See id*. Contrast *Newberry* with *Gowdy v. State*, 56 So. 3d 540, 544-45 (¶¶15, 16) (Miss. 2010). In *Gowdy*, the Mississippi Supreme Court vacated Gowdy's sentence under Mississippi Code Annotated section 99-19-83 (Rev. 2007). *Id*. at 546 (¶22). In that case the State informed the court of its intention to amend the indictment after Gowdy's trial and conviction. *Id*. at 544-45 (¶15). The State was not aware of Gowdy's prior convictions in Iowa. *Id*. at 544 (¶15). The State waited until Gowdy's sentencing hearing two months later to file the motion to amend. *Id.* Our Supreme Court held that to amend the indictment under these circumstances subjected Gowdy to unfair surprise and deprived him of due process of law and fair notice. *Id*. at 545-46 (¶¶16, 19-21). The court went on to opine that "[t]here is no incentive for the State to be diligent in obtaining a prospective indictee's criminal record in advance of presenting a new charge to a grand jury and timely complying . . . if it may simply amend the indictment at any time before sentencing." *Id*. at 546 (¶20).

¶15. However, on July 1, 2017, the Mississippi Rules of Criminal Procedure went into effect and changed the procedure under which the State may amend the indictment to enhance the defendant's status to that of a habitual offender. Mississippi Rule of Criminal Procedure 14.1(b) states:

When an indictee may be eligible for enhanced punishment because of one (1) or more prior convictions, *the State shall either*:

(1) specify such prior conviction(s) in the indictment, identifying each such prior conviction by [t]he name of the crime, the name of the court in which each such conviction occurred and the cause number(s), the date(s) of conviction, and, if relevant, the length of time the accused was incarcerated for each such conviction; or

(2) *after indictment, and at least thirty (30) days before trial* or entry of a plea of guilty, *file with the court formal notice of such prior conviction(s). The notice shall be served upon the defendant or the defendant's attorney* and shall contain the same information specified in subsection (1) of this rule. *An untimely-filed formal notice is permitted only when the thirty (30) day requirement is expressly waived, in writing, by the defendant.* Clerical mistakes in such formal notice may, with leave of the court, be amended prior to the pronouncement of sentence.

(Emphasis added).

¶16.  The State sought to file the amended indictment on June 13, 2018, the day of trial. The State informed the trial court that on January 31, 2018, the defense was told, as part of plea negotiations, that it intended to amend Hughes's indictment to charge him as a habitual offender. Defense counsel did not dispute the State's assertion that it intended to amend Hughes's indictment. The parties agree that defense counsel went back and spoke to Hughes again, but no plea deal was reached. On January 31, 2018, the State had presented the judge with a motion to amend, and the judge signed and dated the order amending the indictment. Neither the motion nor the order was filed with the court.  In fact, the prosecutor admitted that he still had the unfiled motion and the order in his possession on the day of trial. Although defense counsel did not dispute the above facts, he objected to the untimely filing of the State's motion to amend the indictment. The trial court overruled the objection and

10

allowed the amendment to be filed.

¶17.  "Whether the trial court erred by allowing the indictment to be amended on the day of trial is an issue of law that is reviewed de novo." *Ferguson v. State*, 136 So. 3d 421, 423 (¶8) (Miss. 2014).

¶18.  Under the old rule and precedent, the ruling allowing the amendment would be affirmed. However, the new procedural rule guarantees fairness and alleviates the arbitrary exercise of the State's power. The Mississippi Constitution requires procedural safeguards when one's liberty interest is subject to be lost.[3] The substantive right protected by Rule 14.1(a)-(b) is the notice to a defendant of the liberty he stands to lose. "Notice of the charge includes notice of the applicable minimum and maximum penalties." *Gowdy*, 56 So. 3d at 546 (¶21). Rule 14.1(b)(2) is clear and leaves no discretion with the State or ambiguity for the defendant. The rule expressly states that when the defendant is eligible and the State intends to have the indictee sentenced as a habitual offender, the State "*shall* . . . after indictment, and *at least thirty days before trial . . . file with the court formal notice* of such prior conviction(s)."[4]  MRCrP 14.1(b)(2) (emphasis added). The rule goes on to say that

---

[3] The Order adopting the Mississippi Rules of Criminal Procedure begins with "The Mississippi Constitution mandates certain procedural requirements in the criminal law of this State. And the Mississippi Legislature and this Court, acting on the respective authority vested in them by the Mississippi Constitution . . . [i]n order to promote justice, uniformity, and efficiency in our courts . . ."  MRCrP Adopting Order.

[4] Hughes also points to Mississippi Rule of Criminal Procedure 1.7(c)(1), which provides that "the filing of pleadings and other papers with the court as required by these Rules *shall be made by filing them with the clerk of the court*, except that the judge may permit the papers to be filed with the judge, in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk." (Emphasis added).

11

"[a]n untimely-filed formal notice *is permitted only when . . . expressly waived, in writing, by the defendant*." *Id.* (emphasis added). The rule leaves little for interpretation, and it is not reflected in the record that its directives were followed.

¶19. The State did not initially indict Hughes as a habitual offender, and the State did not file its motion or formal notice of enhanced sentencing with the circuit court clerk at least thirty days before trial post-indictment. Moreover, the prosecutor had no explanation for the reason he did not file the motion or the order by the end of the court's term or for another five months. Plus, the defendant did not expressly waive the thirty-day requirement in writing. Verbal notice by the prosecutor and a verbal acknowledgment by defense counsel does not meet the requirement of Rule 14.1(b). The State informed Hughes's attorney of its intention to amend the indictment, which may have created an expectation on Hughes's part that he would be indicted as a habitual offender. Likewise, once the thirty-day deadline passed, the mandates of the rule created the expectation that he would *not* be indicted as a habitual offender. The facts of this case are not unique but present an old quandary that the rule is design to resolve. Hughes was not sentenced according to new rules of criminal procedure, and therefore his sentence must be vacated and remanded for a new sentence in accordance with Mississippi Code Annotated section 97-17-23(1).

## CONCLUSION

¶20. Every prosecution and sentence must be in compliance with statutory authority, case precedent, and the procedural rules of court. The evidence is insufficient to support a conviction for burglary of a shed, and we must reverse and render on Count II of the

12

indictment. Because the State failed to timely amend the indictment to reflect Hughes's habitual status, we are compelled to vacate the sentence and remand this case for re-sentencing on Count I.

¶21. **AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR RE-SENTENCING ON COUNT I; REVERSED AND RENDERED ON COUNT II.**

**BARNES, C.J., GREENLEE AND McDONALD, JJ., CONCUR. C. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. J. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., TINDELL, AND McCARTY, JJ.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶22. I agree with the majority that the evidence used to convict Hughes under Count II was insufficient. I disagree that Hughes's classification as a habitual offender should be vacated. Hughes and his attorney were both aware of the motion to amend on January 31, 2018—months before trial began on June 13, 2018. The order allowing the indictment to be amended was actually signed by Judge Collins on January 31, 2018. The motion and order were not filed as a result of plea negotiations and at the request of defense counsel. Therefore, I would hold that the trial court did not err by granting the State's motion to amend the indictment and allowing the signed order to be filed the day before trial. For this reason, I respectfully dissent from part II of the majority's opinion.

¶23. On January 31, 2018, the State intended to file a motion to amend Hughes's indictment to include a sentencing enhancement as a habitual offender. On that same day, the State had Judge Collins sign an order granting the motion to amend. The defense knew

13

of the motion and the signed order on that date. During that time, the State was in plea negotiations with the defense. Defense counsel requested that the State not file the motion to amend or the signed order on that day so that he could speak with his client, Hughes, about accepting a plea deal. The State agreed to the request of defense counsel. Therefore, the motion to amend and the signed order were not filed on January 31. The motion to amend and the signed order to amend the indictment, which was signed by Judge Collins on January 31, 2018, were both stamped "filed" on June 12, 2018. Both the motion and the order were entered onto the docket on June 13, 2018. The case was set for trial to begin on June 13, 2018. After the jury was selected on June 13, 2018, but before witnesses were called, the State addressed the motion to amend the indictment on the record. The district attorney explained to the trial judge why the motion and order, although the motion was delivered to the defense on January 31, 2018 and the proposed order was signed on January 31, 2018, had not been filed earlier. The following exchange occurred:

> MR. KILGORE: [During plea negotiations] we had not reached a plea agreement, and so I got the Court, more specifically, Judge Collins, to sign [the order sustaining the motion to amend the indictment] on January 31, 2018. As I was about to file it, [defense counsel] said, "Hang on just a second. Let me talk to [Hughes] one more time." And I said no problem. And he went back and spoke to his client, who still didn't want to take a plea bargain. . . .

> MR. SUMRALL: **Your Honor, which we would say that the facts that he stated are basically true. That's exactly what happened.** We were in negotiations and I asked him to hold on so I could talk to [Hughes] one time. And he, once again, refused the offer. I'm not going to dispute the facts at all. . . .

14

| THE COURT: | **January 31st you were aware of the prosecutor's intention** – |
|---|---|
| MR. SUMRALL: | **Yeah**, and so was – |
| THE COURT: | — and certainly aware that your client had these prior convictions? |
| MR. SUMRALL: | Yes, sir. |

(Emphasis added). After the defense admitted it knew of the proposed amendment on January 31 and that it had not been filed at their request, the trial judge "allow[ed]" the amendment, and the parties immediately proceeded to trial.

¶24. Rule 14.1(b)(2) of the Mississippi Rules of Criminal Procedure states that sentencing enhancements may be appropriate when

> [the State,] after indictment, and **at least thirty (30) days before trial** or entry of a plea of guilty, **file with the court formal notice of such prior conviction(s)**. The notice shall be served upon the defendant or the defendant's attorney and shall contain the same information as specified in subsection (1) of this rule. An untimely-filed formal notice is permitted only when the thirty (30) day requirement is expressly waived, in writing, by the defendant. Clerical mistakes in such formal notice may, with leave of the court, be amended prior to the pronouncement of sentence.

(Emphasis added). As discussed above, the State's motion to amend and the signed order granting the same were originally dated January 31, 2018. Because plea negotiations were ongoing, the defense requested that the State not file the motion to amend or the signed order granting the motion. The defense admitted to the trial judge that they were aware of the State's motion to amend and the order on January 31, 2018. The defense now claims unfair surprise and a technical violation of Rule 14.1. The majority is correct that Rule 14.1 is clear in requiring a thirty-day, before-trial filing of a formal notice of the defendant's prior

15

convictions. To hold otherwise would put form over substance, by contradicting the notions of fundamental fairness that the laws of this State and the Mississippi Rules of Criminal Procedure are built upon. The Rule protects a defendant's rights to present an adequate defense and not be unfairly surprised by an untimely amendment to his indictment. Here, however, it was clear that the defendant was not unfairly surprised. The defense admitted it knew about the motion to amend. The defense admitted it knew that the order allowing the amendment had been signed. The defense admitted that the order was not filed by the State because the defense asked the State not to file it until plea negotiations were exhausted. Under the unique facts of this case, a strict interpretation of this rule would reward Hughes. Yet it was Hughes who specifically asked for the delay in the filing of the required documents. It is hard to imagine how a defendant can be surprised by his own criminal record, or how his sentence as a habitual offender should be set aside, when he was the reason the State did not file the necessary documents under Rule 14.1. The underlying purpose of Rule 14.1 is to provide notice to the defendant. It is without doubt that the defendant in this case had notice of the sentencing enhancement six months before trial.

¶25. The majority opinion cites *Gowdy v. State*, 56 So. 3d 540 (Miss. 2010), and *Newberry v. State*, 85 So. 3d 884 (Miss. Ct. App. 2011), to support its finding that Hughes's habitual-offender sentence should be vacated. The facts of *Gowdy* and *Newberry* are drastically different from the facts surrounding the instant case. The supreme court in *Gowdy* held that the State was unable to amend the indictment after the defendant was convicted. *Gowdy*, 56 So. 3d at 545 (¶19). As the Mississippi Supreme Court noted, "it logically follows that if the

16

State may not amend the indictment to charge the 'big' enhancement after conviction when the original indictment charged only the 'little' enhancement, then the State may not amend the indictment to *add* an enhanced penalty **after** conviction." *Id*. (second emphasis added). In his separate opinion, Justice Pierce noted that "it is well-established that 'prior offenses used to charge the defendant as a habitual offender are not substantive elements of the offenses charged.'" *Id*. at 548 (¶32) (Pierce, J., concurring in part and dissenting in part) (quoting *Adams v. State*, 772 So. 2d 1010, 1021 (¶52) (Miss. 2000); *Swington v. State*, 742 So. 2d 1106, 1118 (¶44) (Miss. 1999)). The fact that Hughes met the standards for a habitual offender did not change the elements set forth in the indictment he had to defend at trial. Again, this does not amount to unfair surprise, and amending the indictment to include the sentencing enhancement did not restrict Hughes's ability to present his defense to the jury.

¶26.     In *Newberry*, this Court found that the defendant "had sufficient pretrial notice of the habitual-offender charge" that "allow[ed] him time to prepare a defense against the habitual-offender charge . . . ." *Newberry*, 85 So. 3d at 891 (¶17). There the State filed a motion to amend the indictment six days before trial. *Id*. at 886 (¶4). This Court held that "there [was] no unfair surprise" to the defendant. *Id*. at 889 (¶11).

¶27.     More in line with the facts of this case is this Court's decision in *Jackson v. State*, 943 So. 2d 746, 749-50 (¶¶13-16) (Miss. Ct. App. 2006). Jackson was originally indicted in February 2004. *Id*. at 748 (¶5). The day before his trial in October 2004, the State filed a motion to amend the indictment. *Id*. Even though Jackson's attorney claimed the motion was untimely, the trial court found that because the State had made the defense aware of the

motion in June 2004, the amendment was proper. *Id*. at 748-49 (¶¶6-7). On appeal, we held that it was not error for the trial court to permit the amendment to Jackson's indictment because "Jackson's counsel admitted that he was aware that the district attorney was considering amending the indictment to name Jackson as a habitual offender in June 2004." *Id*. at 750 (¶16).[5]

¶28.   In this case, we face the same scenario as in *Jackson*.  In an effort to accommodate Hughes's request and to continue ongoing plea negations, the State held off on filing the order amending the indictment that Judge Collins signed on January 31, 2018.  The defense was aware of the motion and the signed order granting the motion, as well as the intent of the State on January 31, 2018—almost six months before trial.  Hughes cannot now claim surprise on appeal when he was well aware of the State's intentions months before trial.  As the record clearly shows, the motion or order was not filed on January 31, 2018, at the behest of the defendant.  I would hold that the trial judge did not abuse his discretion under these unique facts and affirm Hughes's sentence as a habitual offender.  Therefore, I respectfully dissent from part II of the majority's opinion.

**CARLTON, P.J., TINDELL AND McCARTY, JJ., JOIN THIS OPINION.**

---

[5] Notably, at the time Jackson was indicted, the court was still bound by the Uniform Rules of Circuit and County Court Practice instead of the Mississippi Rules of Criminal Procedure.  The former rules declared that an amendment was allowable "only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09.  The same fundamental principles of fairness and notice apply under Rule 14.1 of the Mississippi Rules of Criminal Procedure.

18